[Cite as *In re I.S.*, 2018-Ohio-615.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: I.S. | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 17CA019 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Holmes County Court
of Common Pleas, Probate and Juvenile
Division Case No. 14N197

JUDGMENT:                   AFFIRMED

DATE OF JUDGMENT ENTRY:      February 14, 2018

APPEARANCES:

For Plaintiff-Appellee:                 For Defendants-Appellants:

SEAN WARNER                             DAVID M. HUNTER
164 E. Jackson St.                      244 West Main St.
Millersburg, OH 44654                   Loudonville, OH 44842
                                        Attorney for Thomas Miller

                                        MONICA L. MIYASHITA
                                        P.O. Box 94
                                        Orrville, OH 44667
                                        Attorney for Opal Stevens

*Delaney, J.*

{¶1}   Defendant-appellant Opal Stevens ("Mother") appeals from the September 22, 2017 Judgment Entries of the Holmes County Court of Common Pleas, Probate and Juvenile Division, granting appellee Holmes County Department of Job and Family Services, Children Services Division ("Agency") permanent custody of her daughter I.S. and her son B.S.[1]

### FACTS AND PROCEDURAL HISTORY

{¶1}   Mother has several children but relevant here are I.S., born October 25, 2010, and B.S., born September 19, 2012.  I.S.'s biological father is not a party to the instant case.  Father of B.S. is Thomas Miller ["Father"].[2]  At the time this case arose, Mother and Father lived with B.S. and his siblings I.S. and John Doe in Holmes County, Ohio.

{¶2}   On November 23, 2014, the Agency received a report that Mother threw a sippy cup at B.S., yelled at him, and threatened to "cut his hands off" if he did not behave. On December 8, 2014, the Agency filed a complaint alleging I.S. and B.S. to be neglected and abused.

{¶3}   B.S. and I.S. were found to be neglected as to Mother on March 3, 2015.

{¶4}   A case plan was adopted and Mother was required to, e.g., complete parenting classes; to obtain a psychological evaluation; to complete a domestic violence

---

[1] Mother's appeal of the decision as to I.S. is 5th Dist. Holmes No. 17CA019 and of the decision as to B.S. is 5th Dist. Holmes No. 17CA020.

[2] Father appealed the trial court's decision to grant permanent custody of B.S. to the Agency in In the matter of B.S., 5th Dist. Holmes No. 17CA018.

assessment; and to complete individual counseling and maintain housing and employment.

{¶5} During a trauma assessment of I.S., Mother admitted she had "no bond" with I.S. because an ultrasound during her pregnancy indicated I.S. was a boy but she was in fact a girl. Mother admitted she found it difficult to bond with a girl and that it was difficult for her to care for three children, citing time spent in the hospital with John Doe, which took her away from I.S., who was three years old when John Doe was born.

{¶6} The assessor noted Mother had problems processing what she learned in the parenting classes. When asked what ideas she took away from the parenting classes, Mother could not explain strategies to be a better caregiver of her children.

{¶7} The Agency's visitation coordinator testified about interaction with Mother at visitation. Mother had limited engagement with B.S. and I.S. during visitation, sometimes choosing to color by herself. Mother did not intervene in the children's unruly behavior, remaining seated and simply telling the children to stop. Mother sometimes called the visitation coordinator back into the room to report that the children were not listening to her. At least one visit with Mother was disruptive to the extent that the children left the room and ran down the hall, and destroyed Agency property. The visits were described over time as progressively worse.

{¶8} Mother's psychological evaluation indicated she is at risk for physical abuse and neglect of her children, concluding that her visitation should be limited and supervised. The evaluator noted that Mother's lowered borderline intellectual capacity makes it difficult for her to complete a case plan and the prognosis for positive change is

poor.  (The trial court did note that at the time of the evidentiary hearing this evaluation was two years and one month old, and such results are considered valid for two years.)

{¶9}  The children were found to be negatively impacted by interaction with Mother and Father.  Mother was described as indifferent toward the children.

{¶10} I.S.' trauma assessment indicated she experienced increased behavioral issues when she visited with Mother but those issues dissipated almost immediately when visitation was suspended.  I.S. exhibited anxiety surrounding visitation with Mother, exacerbated by Mother's vacillation between ignoring I.S. and expressing frustration toward her.

{¶11} B.S. exhibited behavioral issues and was also assessed for trauma.  It was determined that he has been a victim of and a witness to domestic violence perpetrated by Father and Mother.  B.S. stated he does not feel safe with Mother and Father.  Mother acknowledged that she may have slapped B.S. to a caseworker.

{¶12} The family's ongoing caseworker acknowledged Mother completed her case plan services, but the caseworker opined there was no reduction in risk to the children.  The caseworker discussed this conclusion with Mother in June 2017 and was met with defiance, denial, and confusion.  Mother never expressed any concern about I.S. and B.S. or asked how they were doing.  The caseworker agreed with other witnesses that Mother did not engage with the children during visitation and did not have positive interaction with them.

{¶13} Ultimately, the caseworker acknowledged both parents worked hard toward completing their case plans but did not prove themselves capable of retaining what they

were taught.  She saw no increase in positive interaction between Mother, I.S., and B.S. during the course of the case plan.

{¶14} At the time of the evidentiary hearing, the Agency had maintained temporary custody of I.S. and B.S. for 32 months, and Mother had not visited the children for 16 months of that time period.

{¶15} I.S. and B.S. were in the temporary custody of the Agency and placed with the same foster family for 21 months when the Agency moved for permanent custody of both siblings on September 15, 2016.  The basis of the motion for permanent custody was the fact that the children were in the custody of the Agency for more than 12 months of a consecutive 22-month period.

{¶16} An evidentiary hearing was held in late June, 2017.  On September 22, 2017, the trial court awarded permanent custody of B.S. and I.S. to the Agency.

{¶17} Mother now appeals from the trial court's decision granting permanent custody of I.S. and B.S. to the Agency.

{¶18} Mother raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶19} "I.  THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING INTO EVIDENCE A VIDEOTAPE PURPORTED TO DEPICT A TYPICAL VISIT IN CONTRAVENTION OF RULE 403 OF THE OHIO RULES OF EVIDENCE AND WITHOUT AUTHENTICATION PURSUANT TO RULE 901 OF THE OHIO RULES OF EVIDENCE."

{¶20} "II.  THE TRIAL COURT'S JUDGMENT THAT IT WAS NOT IN THE BEST INTERESTS OF THE MINOR CHILDREN TO BE PLACED WITH [MOTHER] WAS

AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE PRESENTED TO THE COURT."

**ANALYSIS**

I.

{¶21} In her first assignment of error, Mother argues the trial court erred in admitting the Agency's Exhibit E, a videotape of visitation between Mother and the children, into evidence. We disagree.

{¶22} At the evidentiary hearing, Nakesha Henderson, the Agency visitation coordinator, testified about supervised visitation between Mother and the children. While not all visitation is video-recorded, the Agency has the capability to do so and each visitation room contains a monitor which can record the visitation onto a drive which may be burned onto a CD or USB drive. Henderson acknowledged she did not personally download or burn the CD recording, but she was able to identify the parties on the recording because she personally observed the visitation as it occurred (T. 95-96).

{¶23} Mother objected to the showing of the video as follows:

> * * * *.
>
> [MOTHER'S COUNSEL]: Your Honor, I'm going to object to this, uh, DVD being played. My client has had many, many visits with the children. The—by the witness' own testimony, sometimes they kept the recording, sometimes they recorded, sometimes they didn't.
>
> THE COURT: Right.

[MOTHER'S COUNSEL]: Uh, they're using, apparently, one video to prove their entire point, and I, uh, don't think that the agency should be able to pick through all these recordings that we have not had the opportunity to see as attorneys, and choose what portion of those recordings they want shown to the Court.

* * * *.

[AGENCY COUNSEL]: Thank you. We provided more than just this visit, Your Honor, uh, in discovery. So they're free to play other visits. Uh, but these are the ones, uh, that were recorded and were produced. Uh, and I plan to ask—all of this is—I only plan to show one visit just for the, uh, economy's sake and not, you know, duplicating evidence. But I do have questions about this, uh, particular visit relative to other visits that she's seen.

[MOTHER'S COUNSEL]: And to be clear, Your Honor, I have received recorded, uh, supervised visits from March 31st, May 4th, May 18th, and June 2nd. There's a whole lot more visits that occurred besides those four dates.

* * * *.

T. 97.

{¶24} The Court asked Mother's counsel for her specific legal objection to introduction of the exhibit, and she responded that the exhibit was not representative of the visits in general. The trial court overruled the objection, noting Mother could show other videos in her case if she chose to do so (T. 98).

{¶25} The Agency then explained 24 minutes of a two-hour visit would be shown, and Mother reserved the right to cross-examine on the entire video consisting of ostensibly two hours. The video depicts visitation on June 2nd and includes Mother, B.S., I.S., and John Doe. As Henderson described, the visitation was cut short because it was so chaotic that Mother and Agency staff decided to terminate the visit and try again another time. B.S. and John Doe left the visitation room and were returned by Agency staff. Henderson testified that she intervened several times but Mother remained "stationary" throughout the visit, and that this in one of the worst mother-child interactions she's observed in her role overseeing "thousands" of visits.

{¶26} Mother's counsel then cross-examined Henderson about the content of the video and established the visitation last about an hour before it was cut short.

{¶27} On appeal, Mother first argues that admission of the video violates Evid.R. 403(A), which provides that otherwise relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice[.]" A trial court's determination that evidence is admissible under Evid.R. 403 will not be disturbed on appeal absent an abuse of the trial court's discretion. *State v. Allen*, 73 Ohio St.3d 626, 633, 653 N.E.2d 675 (1995). An abuse of discretion connotes action by the trial court that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶28} In the instant case, video of the supervised interaction between Mother and her children, while not favorable to Mother, was wholly relevant to the proceedings. "Relevant evidence of one's inability to parent a child is almost always prejudicial in a permanent custody case, but a danger of 'unfair prejudice' is required for relevant

evidence to be inadmissible under Evid.R. 403(A)." *In re J.T.*, 10th Dist. Franklin No. 11AP-1056, 2012-Ohio-2818, ¶ 31.   Mother does not explain why the evidence was unfairly prejudicial, and we find nothing to support such a claim. Id.  There is no indication that the danger of unfair prejudice substantially outweighed the probative value of the videotape. Accordingly, the trial court did not abuse its discretion. See*, In re Woodruff*, 9th Dist. Wayne No. 97-0057, 1999 WL 335052, *5 [challenged evidence clearly relevant to resolution of motion for permanent custody]; *In re Pernell C.*, 6th Dist. Lucas No. L-04-1007, 2004-Ohio-5791, ¶ 97 [challenged evidence probative of Agency's concerns and does not outweigh prejudice to mother].

{¶29} Mother argues Exhibit E showed only a portion of visitation with B.S. and I.S., but as the trial court pointed out, Mother could have introduced more favorable video evidence during her own case.

{¶30} Mother also cites Evid.R. 901(A), which states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."   Authentication of the videotape was not argued before the trial court, and on appeal Mother fails to point out any defect as to what was depicted in the footage.  See, *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, reconsideration denied, 142 Ohio St.3d 1479, 2015-Ohio-2104, 31 N.E.3d 656, and cert. denied, 136 S.Ct. 585, 193 L.Ed.2d 471 (2015).

{¶31} Moreover, the "threshold requirement for authentication of evidence is low and does not require conclusive proof of authenticity." *State v. Freeze,* 12th Dist. Butler No. CA2011–11–209, 2012–Ohio–5840, ¶ 65, citing *State v. Easter,* 75 Ohio App.3d 22,

25 (4th Dist.1991). Rather, "the state only needs to demonstrate a 'reasonable likelihood' that the evidence is authentic." *Id.* Either circumstantial evidence or direct evidence may be used to prove the authenticity of evidence. *State v. Vermillion,* 4th Dist. Allen No. 15CA17, 2016–Ohio–1295, ¶ 14. Testimony of a witness with knowledge that the "matter is what it is claimed to be" is sufficient to properly authenticate an item pursuant to Evid.R. 901(A). In this case, authentication was provided by Henderson's testimony that the videotape of the visit is what it was claimed to be, and Mother fails to point to any indication of a failure of authenticity.

{¶32} We further note Exhibit E is contained in the appellate record and we have reviewed it, along with the other exhibits admitted in the case. We find the trial court did not abuse its discretion in admitting Exhibit E.

{¶33} Mother's first assignment of error is overruled.

II.

{¶34} In her second assignment of error, Mother argues the trial court's decision to grant permanent custody of I.S. and B.S. to the Agency is against the manifest weight and sufficiency of the evidence. We disagree.

{¶35} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue

must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶36} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶37} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶38} Pursuant to R.C. 2151.414(B)(1), the trial court may grant permanent custody of a child to a movant if the court determines at the hearing, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody **and** that any of the following apply:

> (a) The child is not abandoned or orphaned, has not been in
>
> the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or

parents from whose custody the child has been removed has been

adjudicated an abused, neglected, or dependent child on three

separate occasions by any court in this state or another state. * * * *.

{¶39} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (e) is present before proceeding to a determination regarding the best interest of the child.

*R.C. 2151.414(B)(1)(d)*

{¶40} In the instant case, the trial court first considered the best interests of I.S. and B.S., which we shall address infra.

{¶41} The trial court also concluded, however, that R.C. 2151.414(B)(1)(d) applies to I.S. and B.S., to wit, the children were in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period.[3]  The children were placed in the temporary custody of the Agency on December 8, 2014, and temporary custody remained with the Agency continually until the evidentiary hearing at the end of June 2017, a period of thirty months.

{¶42} Mother argues the trial court failed to consider all of the statutory factors because the trial court did not make findings pursuant to R.C. 2151.414(E), but the trial court was not required to do so because R.C. 2151.414(B)(1)(a) is an alternate finding

---

[3] R.C. 2151.414(B)(1)(b) also applies to I.S. with respect to her biological father, who is not a party to the instant case.

under R.C. 2151.414(B)(1). Instead, as noted above, the trial court made its finding pursuant to R.C. 2151.414(B)(1)(d).

{¶43} Mother does not challenge the trial court's finding under R.C. 2151.414(B)(1)(d). Findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, and each is independently sufficient to use as a basis to grant the Agency's motion for permanent custody. *In re Langford*, 5th Dist. Stark No. 2004CA00349, 2005-Ohio-2304, ¶ 17, citing *In re Whipple Children,* 5th Dist. Stark No. 2002CA00406, 2003–Ohio–1101, ¶ 26; see also, *In re Celano*, 5th Dist. Stark No. 2007 CA 00141, 2007-Ohio-5645.  Upon review, we agree with the trial court's finding that R.C. 2151.414(B)(1)(d) is applicable to the facts of this case.

{¶44} Mother does not set forth an argument pertaining to the trial court's finding under R.C. 2151.414(B)(1)(d), and we therefore conclude the trial court's finding is not against the manifest weight or sufficiency of the evidence.  *Langford*, supra, at ¶ 18.

*Best Interests of I.S. and B.S.*

{¶45} Pursuant to R.C. 2151.414(D)(1), in determining the best interest of a child in a permanent custody proceedings, the court shall consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period * * * * ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.  * * * *.

{¶46} The trial court noted the lack of a bond between Mother and her children as evidenced by the visitation issues.  Despite her completion of her case plan, Mother did not reduce the risk of abuse and neglect to her children.

{¶47} B.S. and I.S. were placed together in the same foster home and have a normal sibling relationship with each other for their stage of development.  They are closely bonded to each other and to their foster family.  The foster family would like to adopt both siblings if possible.

{¶48} The guardian ad litem concluded it was in the best interest of both children to grant permanent custody to the Agency, acknowledging both parents completed their case plans but the children could not safely be returned to their care.

{¶49} As noted supra, at the time of the evidentiary hearing I.S. and B.S. had been in the temporary custody of the Agency for over 30 months.

{¶50} I.S. and B.S. need and deserve legally secure permanent placement, which they would find upon an award of permanent custody to the Agency resulting in possible adoption. The record is devoid of any other option short of permanent custody which would achieve this result. No family members have come forward seeking placement of the children, and we agree with the trial court that neither biological parent will be able to provide a legally secure permanent placement. The parents were unable throughout the 30-month period of temporary custody to sufficiently remedy the conditions which led to removal of the children.

{¶51} While Mother points out she has successfully followed her case plan, the evidence of her intellectual capacity supports the conclusion that she will not be able to apply what she has learned, and her intellectual capacity is not a factor which will change. We agree that the evidence demonstrates that any harm of severing the parental bond is outweighed by the benefits of permanency. The record further demonstrates that the risks to the children which required their removal have not been alleviated.

{¶52} Upon this record, we find the trial court's decision that it was in the best interests of I.S. and B.S. to be placed in the permanent custody of the Agency is supported by clear and convincing evidence and is not against the manifest weight of the evidence.

{¶53} Mother's second assignment of error is overruled.

**CONCLUSION**

{¶54} Mother's two assignments of error are overruled and the judgment of the Holmes County Court of Common Pleas, Probate and Juvenile Divisions is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.