[Cite as *In re A.S.*, 2019-Ohio-342.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
|  | JUDGES: |
|  | Hon. John W. Wise, P. J. |
|  | Hon. Patricia A. Delaney, J. |
| IN THE MATTER OF: | Hon. Craig R. Baldwin, J. |
|  |  |
| A.S. | Case No. 18 CA 007 |
|  |  |
|  | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 14N199 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | February 1, 2019 |

APPEARANCES:

| For Appellee HCDJFS | For Appellant Mother |
|---|---|
| ROBERT K. HENDRIX | DAVID M. HUNTER |
| ASSISTANT PROSECUTOR | 244 West Main Street |
| 164 East Jackson Street | Loudonville, Ohio  44842 |
| Millersburg, Ohio  44654 | |

*Wise, P. J.*

{¶1} Appellant-Mother Opal P. appeals the decision of the Holmes County Court of Common Pleas, Juvenile Division, which granted permanent custody of her minor son, A.S., to Appellee Holmes County Department of Job and Family Services ("HCDJFS"). The relevant procedural facts leading to this appeal are as follows.

{¶2} Appellant is the mother of the minor child A.S., born in 2013. This Court has previously affirmed the permanent custody decisions from Holmes County involving two of appellant's other children. *See Matter of I.S.*, 5th Dist. Holmes No. 17CA019, 2018-Ohio-615; *Matter of B.S.*, 5th Dist. Holmes No. 17CA020, 2018-Ohio-616. The present opinion will focus upon A.S.'s case.

{¶3} On December 8, 2014, HCDJFS filed a complaint alleging abuse, neglect, and dependency concerning A.S., I.S., and B.S. in the Holmes County Court of Common Pleas, Juvenile Division. Among the concerns at that time were that appellant indicated intellectual limitations, lacked parenting skills, and was in a relationship with a man who had a domestic violence and sex offender history.

{¶4} HCDJFS thereupon obtained temporary custody of A.S. On or about March 3, 2015, appellant appeared in court and stipulated to a neglect finding.

{¶5} On September 15, 2016, HCDJFS filed a motion for permanent custody of A.S. (as well as siblings I.S. and B.S. under separate case numbers), citing R.C. 2151.413(D)(1).

{¶6} However, on January 30, 2017, more than two years after the initiating complaint, custody of A.S. was returned to appellant, who by that time had moved to Coshocton County, Ohio.

**{¶7}** But on or about April 12, 2017, HCDJFS again obtained temporary custody of A.S. after a medical report indicated he had suffered multiple bruises on his face and body.[1]

**{¶8}** On April 21, 2017, the agency again moved for permanent custody, and the matter proceeded to evidentiary hearings on May 30, May 31, and June 7, 2018. The court heard testimony from thirteen witnesses, including appellant. After taking the matter under advisement, the trial court on August 23, 2018 issued a decision, along with a separate twenty-six page analysis, granting permanent custody of A.S. to HCDJFS.

**{¶9}** On August 27, 2018, appellant-mother filed a notice of appeal. She herein raises the following sole Assignment of Error:

**{¶10}** "I. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY OF A.S. TO THE HOLMES COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES[,] AS THE TRIAL COURT'S BEST INTEREST FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

**{¶11}** In her sole Assignment of Error, appellant-mother contends that the trial court's granting of permanent custody of A.S. to the agency was against the manifest weight of the evidence, particularly as the court's "best interest" finding. We disagree.

---

[1] In regard to this troubling development in this case, we note appellant later vaguely admitted that she "could have slapped [A.S.]." *See* Tr. at 141. Despite the length of time appellant had been the beneficiary of case plan reunification services, when she was pressed about what had caused the injuries to A.S., appellant merely "giggled" and showed the caseworker some prescription pain medication, apparently blaming her lack of recollection on the drug. *See* Tr. at 142 (testimony of Susan Shernit of HCDJFS).

{¶12} As an appellate court, we are not the trier of fact; instead, our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base his or her judgment. *Tennant v. Martin–Auer,* 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA5758, 1982 WL 2911. An appellate court, in reviewing a civil manifest weight claim, considers whether the finder of fact, in resolving conflicts in the evidence, clearly lost his or her way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *See Hunter v. Green,* 5th Dist. Coshocton No. 12–CA–2, 2012–Ohio–5801, ¶ 25, citing *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012–Ohio–2179. It is well-established that the trial court in a bench trial is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown,* 9th Dist. Summit No. 21004, 2002–Ohio–3405, ¶ 9, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. Furthermore, the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. *See State v. Caldwell* (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096.

### *R.C. 2151.414(B)(1) Requirements*

{¶13} R.C. 2151.414(B)(1) reads in pertinent part as follows:

Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, *** and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court * * *.

{¶14} We note the trial court in the case *sub judice* relied on both R.C. 2151.414(B)(1)(b), *supra,* and R.C. 2151.414(B)(1)(d), *supra. See* Judgment Entry, August 23, 2018, at 2. Appellant herein does not dispute the applicability of "twelve of twenty-two" rule in (B)(1)(d) to her case. *See* Appellant's Brief at 12. It is well-established that (B)(1)(d) is independently sufficient to use as a basis to grant an agency's motion for permanent custody. *See In re M.R.,* 3rd Dist. Defiance No. 4–12–18, 2013–Ohio–1302, ¶ 80. Similarly, (B)(1)(b) (abandonment) is independently sufficient to use as a basis to

grant a motion for permanent custody. *See In re N.W.*, 10th Dist. Franklin No. 07AP–590, 2008–Ohio–297, ¶ 10; *In re Anthony/Bentley Children*, 5th Dist. Stark No. 2001CA00185, 2001 WL 1769937.[2]

{¶15} Under these circumstances, we are compelled, based on R.C. 2151.414(B)(1)(d), to directly proceed to an analysis of the best interest issue. *See, e.g., In re Walton/Fortson Children,* 5th Dist. Stark No. 2007CA00200, 2007–Ohio–5819, ¶ 14.

### *R.C. 2151.414(D)(1) Best Interest Consideration*

{¶16} In determining the best interest of a child for purposes of permanent custody disposition, the trial court is required to consider the factors contained in R.C. 2151.414(D)(1) and "all relevant factors." The specified factors are as follows:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or

---

[2]  In this instance, the court's abandonment finding went to A.S.'s father Dustin W. only. He has had limited participation in the present case, and he has not appealed the permanent custody determination.

private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. * * *

{¶17} During the permanent custody trial, HCDJFS called as its second witness Dana Price, M.S.W., L.S.W., who has provided counseling services for A.S. at Family Life Counseling. Price recalled that A.S. has been diagnosed with PTSD and adjustment disorder, but she testified that the child has "shown great progress" in these areas since she began working with him in October 2017. Tr. at 31. She opined that A.S. was bonded with his foster family, and stated that he "shows comfortability" in approaching members of his foster family and in having access to different areas of the foster home. Tr. at 37. *See* R.C. 2151.414(D)(1)(a). The child shows regression and aggression when there is a change in his environment. Tr. at 43. She concluded: "I feel he has a very, very strong connection with [the foster family]." Tr. at 42. He "just feels very comfortable being who his [sic] is at this point." Tr. at 45.

{¶18} HCDJFS also called Lisa Hochstetler, a family service specialist at Kno-Ho-Co Headstart. She indicated she has no concerns with the foster parents, C.M. and R.M., and/or their relationship with A.S. Tr. at 62. She also noted *inter alia* that both the foster

mother and the foster father participate in the school's "parent committee" activities. Tr. at 58.

**{¶19}** Both current foster parents testified. They live in a rural area of Holmes County and have two daughters of their own. C M., the foster mother, expressed an intent to adopt A.S. if possible. Tr. at 94. R.M., the foster father, recalled that A.S. had "exploded" with happiness shortly after being placed with them again in April 2017.  Tr. at 105.

**{¶20}**  Joseph Messner, a licensed mental health counselor at Anazao Community Partners, testified that appellant is dealing with a depressive disorder, which he described as more "chemical" (*i.e.*, not environmental) and long term. Tr. at 67-68. He had observed appellant's improvement in coping with this issue since April 2016. Nonetheless, even though appellant has some support persons in her life, Messner agreed that "it would be difficult for Opal to parent [A.S.] on a long-term, day-to-day basis." Tr. at 192.

**{¶21}** Psychologist Dr. Marianne Bowden testified that she diagnosed appellant in 2015 with major depressive disorder, recurrent, moderate; borderline intellectual functioning; and narcissistic personality disorder. As of 2018, the only change had been supplanting the narcissistic personality diagnosis with personality disorder, not otherwise specified, with strong narcissistic features. Otherwise, the only changes were that appellant had "reduced some of the symptoms." Tr. at 115. Appellant's overall IQ per her 2018 evaluation is 75, very similar to her 2015 score. *Id.* at 116. Dr. Bowden further opined:

**{¶22}**  "But I think the intellectual level, uh, is what really hinders her. Uh, she's not going to be able to learn significantly more information than she already does." Tr. at 123.

{¶23} Susan Shernit, the ongoing caseworker from HCDJFS, described for the court *inter alia* the circumstances of the agency's April 2017 resumption of custody, further noting that since that time appellant had not asked about increased visitation time but had requested that some of A.S.'s clothing items provided by appellant be returned to her "once his foster parents adopt him." Tr. at 142-143. Shernit also observed that appellant would bring activities and crafts for A.S. during visits, but "generally by the end of the visit they are not interacting." Tr. at 152.[3]  Shernit also summarized: "Uh, I believe that [A.S.] and Opal do have a bond, and, uh, I know that they love each other, uh, but, I also observe him to be, uh, very bonded to his foster family, uh, and to love them as well." Tr. at 153. Shernit did agree on cross-examination that appellant's residence in Coshocton, where she had lived since January 2018, was stable and had available space for A.S. Tr. at 159. However, other evidence was adduced that appellant had had eight residences in four years. Tr. at 148.

{¶24} In regard to the wishes of the children (R.C. 2151.414(D)(1)(b)), the trial court noted that the first GAL report, issued on December 6, 2016, actually recommended against permanent custody of A.S. to the agency, indicating that the weekend visits between appellant and A.S. had not resulted in any reported problems. Analysis Entry at 7. The GAL then filed a supplemental report on May 8, 2017, shortly after agency custody was resumed following the discovery of bruising on A.S. *Id.* Because the GAL required more time to review the report of possible abuse and the letter to the trial court from Dustin W., the child's father, expressing an intent to obtain custody, no recommendation as to

---

[3]  Nonetheless, appellant later called Nakesha Henderson of HCDJFS, who described A.S. as appearing to be "well-adjusted and comfortable" during visits, with no inappropriate behavior by appellant. *See* Tr. at 175.

permanent custody was provided at that time. *Id.* The GAL then issued a report on May 23, 2018, and a follow-up report following the permanent custody trial, both of which recommended that permanent custody would be in the best interest of A.S. *Id.* at 8-9.

**{¶25}** In this instance, for purposes of R.C. 2151.414(D)(1)(c), A.S. had undisputedly been in agency custody and foster care placement long enough to meet the "12 of 22" rule.

**{¶26}** In addition, although appellant had been fairly consistent on her parenting skills training, concerns remained that she would not translate them into actual parenting skills. *See* R.C. 2151.414(D)(1)(d). As the trial court aptly noted, although appellant may have followed her case plan obligations in this respect, "if she cannot internalize the concepts she was exposed to and put them into proactive, her ability to competently and safely parent A.S. in the future will be no greater than it was when he was removed from her home in December 2014." Analysis Entry at 13.

**{¶27}** We also note that appellant, as an alternative to permanent custody, urged that A.S. be placed with her aunt, Sarah B., who has two-bedroom trailer with acreage in Coshocton County. However, the record indicates limited contact between Sarah and A.S. during the pendency of this case, and Sarah only became involved in the legal proceedings about one week prior to the permanent custody trial's commencement, and this was at appellant's request. *See* Tr. at 267-271.

**{¶28}** In regard to R.C. 2151.414(D)(1)(e), we find the record shows that the cross-reference to 2151.414(E)(11) would apply in this matter, namely that appellant "*** has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under

an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and [appellant] has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

{¶29} Finally, we recognize that the children services authorities in neighboring Coshocton County apparently have come to differing conclusions regarding appellant's parenting capabilities as to M.P., appellant's youngest child, age two. *See* Tr. at 280-285 (testimony of Jennifer Selders of CCDJFS). In that case, Coshocton County caseworkers did not pursue custody of M.P. following their own investigation, and instead opened a voluntary case plan with appellant. *Id.* We note Dr. Bowden, when asked earlier in the trial to respond to Coshocton's decision to keep M.P. with appellant, had stated that such a result "actually * * * would raise concerns in my mind as to what's going on in Coshocton County." Tr. at 128. Ultimately, the fact that a different county's child protective services unit has presently taken an alternate approach with appellant in another case involving another child, while somewhat unusual, does not sway us from our conclusions in the present appeal *infra*.

{¶30} It is well-established that "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. Stark No. 2000CA00244, 2000 WL 1700073, quoting *In re Awkal* (1994), 95 Ohio App.3d 309, 316, 642 N.E.2d 424. In the case *sub judice*, upon review of

the record and the findings and conclusions therein, we conclude the trial court's judgment granting permanent custody of A.S. to the agency was made in the consideration of the child's best interest and did not constitute an error or an abuse of discretion under the circumstances presented.[4]

**{¶31}** Appellant's sole Assignment of Error is therefore overruled.

**{¶32}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Holmes County, Ohio, is hereby affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/d 0111

---

[4] The trial court conducted an additional analysis under R.C. 2151.413(D)(2) and 2151.414(B)(2), which we find unnecessary to address in the present appeal.